UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re Application of | * | |
| | * | |
| EXCHANGE UNION COMPANY; | * | |
| SHANGHAI HUIYIN GROUP CO. LTD.; | * | |
| SHANGHAI SHENGYI INFORMATION | * | |
| NETWORK CO., LTD.; and WO WEI | * | |
| DONG, | * | |
| | * | Case No. 24-mc-91645-ADB |
| Applicants, | * | |
| | * | |
| Pursuant to 28 U.S.C. § 1782 for Judicial | * | |
| Assistance in Obtaining Evidence for Use in a | * | |
| Foreign and International Proceeding. | * | |
| | * | |
| | * | |
| | * | |
| | * | |

**MEMORANDUM AND ORDER ON DOE INTERVENORS'
MOTIONS TO INTERVENE, TO PROCEED PSEUDONYMOUSLY, AND FOR A
PROTECTIVE ORDER**

BURROUGHS, D.J.

Currently before the Court is a motion to intervene by Doe I and Doe II (the "Doe

Intervenors"), [ECF No. 15], for the purpose of moving to quash the *ex parte* subpoena granted

by this Court on December 20, 2024 pursuant to 28 U.S.C. § 1782, as well as motions to proceed

pseudonymously, [ECF No. 19], and for a protective order, [ECF No. 57].  For the following

reasons, the motions to intervene and to proceed under a pseudonym are **GRANTED**, and the

motion for a protective order is **DENIED**.

I.      **BACKGROUND**

On December 13, 2024, Wo Wei Dong ("Mr. Wo"), Exchange Union Company,

Shanghai Huiyin Group Co. Ltd., and Shengyi Information Network Co., Ltd. (together,

"Applicants") moved this Court *ex parte*, pursuant to 28 U.S.C. § 1782, for an order allowing the

service of subpoenas on Fidelity Brokerage Services LLC, FMR LLC, National Financial Services LLC, and Fidelity Digital Asset Services LLC (together "Fidelity"). See generally [ECF No. 3]. Specifically, Applicants sought evidence to support their pending civil claims first filed on February 20, 2024 in the general division of the High Court of the Republic of Singapore (the "Singapore Proceeding"). [Id. ¶ 2]. In that proceeding, Applicants contend that they own shares in five named corporate-entity defendants—Digital Finance Group Company ("DFGC"), Smart River Investment Limited ("SRIL"), W3 Cap Holdings Co., LTD., Create Fortune Pte. Ltd., and Jumbo Access Investments Limited (referred to as the "Foreign Companies")—and that their assets in those Foreign Companies are being misappropriated by other named defendants. [Id. ¶ 17]; see also [ECF No. 3-2].

On December 20, 2024, this Court granted Applicants' application, permitting them to serve the requested subpoenas on Fidelity. [ECF No. 7]. On or about January 17, 2025, Fidelity separately notified each of the Doe Intervenors that it had received subpoenas in connection with this action and that it intended to produce certain documentation concerning the Doe Intervenors. [ECF No. 19 ("Culver Decl.") ¶ 5]. The Doe Intervenors, who are "legal persons incorporated in foreign jurisdictions," are not named parties to the Singapore Proceeding. [Id. ¶¶ 3–4].

On February 5, 2025, the Doe Intervenors filed a motion to intervene and a motion to proceed under a pseudonym, [ECF Nos. 15, 19], both of which Applicants opposed on February 19, 2025, [ECF Nos. 52, 53]. The Doe Intervenors filed a further motion for a protective order on February 27, 2025, [ECF No. 57], which Applicants opposed on March 13, 2025, [ECF No. 67]. The Doe Intervenors filed replies in support of their motions on February 27, 2025 and March 21, 2025. [ECF Nos. 60, 63, 71].[1]

---

[1] The Doe Intervenors filed their identities with the Court *ex parte* on February 7, 2025.

## II.       DISCUSSION

### A.       **Motion to Intervene**

Federal Rules of Civil Procedure 24 allows intervention of right and permissive intervention.  Rule 24(a), "intervention of right," provides that, upon a "timely application," the Court "must permit anyone to intervene who . . . claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  A party may intervene as a matter of right under Rule 24(a) if it meets the following four requirements:

> First, the application must be timely.  Second, the applicant must claim an interest relating to the property or transaction which is the subject of the action.  Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest.  Fourth, the applicant must show that [its] interest will not be adequately represented by existing parties.

Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989).  A "[f]ailure to satisfy any single requirement for intervention . . . is sufficient grounds to deny [the] request.'" Victim Rights Law Center v. Rosenfelt, 988 F.3d 556, 560–61 (1st Cir. 2021).

The Doe Intervenors contend that they should be permitted to intervene as a matter of right.  The parties do not dispute that their motion is timely.  See generally [ECF Nos. 16, 52, 63].  Rather, Applicants oppose the motion on the grounds that the Doe Intervenors "fail to demonstrate 'the existence of an interest relating to the property or transaction that forms the basis of the pending action,'" [ECF No. 52 at 5 (quoting Fed. R. Civ. P. 24(a)(2))], fail to show that Fidelity's disclosure pursuant to the subpoena will impede that protectable interest, [id. at 6–7], and fail to demonstrate that their interests are not adequately protected by other parties, [id. at 8].  The Doe Intervenors respond that they have an interest in the proceeding because 1) the

discovery sought involves their "confidential financial and proprietary information and documents held by Fidelity," [ECF No. 16 at 2], and 2) the information will be used against them in the Singapore Proceeding, [ECF No. 63 at 2–3].  They further contend that they have met their burden to demonstrate that other parties do not adequately represent their interests, particularly because Fidelity "has informed the Doe Intervenors that it does not itself intend to move to quash."  [ECF No. 16 at 6]; see also [ECF No. 63 at 3].

Regarding the second prong, an "interest" in the transaction, "[w]hile the type of interest sufficient to sustain intervention as of right is not amenable to precise and authoritative definition, a putative intervenor must show at a bare minimum that it has 'a significantly protectable interest.'"  Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 205 (1st Cir. 1998) (quoting Donaldson v. United States, 400 U.S. 517, 531 (1971)).  This protectable interest "'must be direct, not contingent' or illusory."  Allco Renewable Energy Ltd. v. Haaland, No. 21-cv-11171, 2022 WL 18033002, at *4 (D. Mass. Jan. 7, 2022), aff'd sub nom. Melone v. Coit, 100 F.4th 21 (1st Cir. 2024) (quoting Conservation L. Found. of New Eng., Inc. v. Mosbacher, 966 F.2d 39, 42 (1st Cir. 1992)).  "A moving party may satisfy the interest requirement with a showing that its 'contractual rights may be affected by a proposed remedy,' or where the litigation directly threatens '[p]otential economic harm' or 'an economic right or benefit presently enjoyed by any would-be intervenor.'"  Id. (first quoting B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 545 (1st Cir. 2006); and then quoting Patch, 136 F.3d at 205). A showing of "an undifferentiated, generalized interest in the outcome of an ongoing action" is insufficient.  Patch, 136 F.3d at 205–06.

The Court is skeptical that the Doe Intervenors have demonstrated that they have a "significantly protectable interest" as contemplated by Rule 24(a)(2).  First, the Doe Intervenors'

argument that they are entitled to intervene as a matter of right because they are "targets" of the

Singapore Proceeding is unavailing.  The Doe Intervenors are correct that "standing to oppose

subpoenas issued under § 1782 is [not] limited to the subpoenaed witness," <u>Application of

Sarrio, S.A.</u>, 119 F.3d 143, 148 (2d Cir. 1997), and that "one against whom information obtained

. . . may be used . . . has standing to assert that, to his detriment, the authority for which the

section provides is being abused," [ECF No. 63 at 3 (quoting <u>In re Letter of Request from Crown

Prosecution Serv. of U.K.</u>, 870 F.2d 686, 689 (D.C. Cir. 1989))].  That said, the cases the Doe

Intervenors cite and their progeny establish that this statutory standing typically extends, at

furthest, to existing parties to the foreign proceeding or individuals who have been concretely

identified as potential targets of that proceeding.[2]  <u>See, e.g.</u>, <u>Crown</u>, 870 F.2d at 689 (holding

intervenor had standing where applicant conceded that intervenor was "'a potential target' in a

'wide-ranging' British investigation"); <u>In re Bourlakova</u>, No. 24-mc-00071, 2024 WL 4839047,

at *2 (S.D.N.Y. Nov. 20, 2024) ("Because the Bourlakovas intend to use the requested discovery

in their U.K. Proceeding against the Kazakovs, the Kazakovs' motion to intervene is granted.");

<u>In re Niedbalski</u>, No. 21-mc-00747, 2023 WL 5016458, at *3 (S.D.N.Y. May 8, 2023) (granting

motion to intervene to quash subpoena seeking records from third-party financial institutions

---

[2] It is worth noting that there is a conflict in the case law on this issue, with some courts holding that a party lacks standing to challenge a subpoena issued pursuant to § 1782 even if the discovery will be used against the party in a foreign proceeding unless the party can raise a claim of privilege.  <u>See, e.g.</u>, <u>In re Zarzur</u>, No. 22-mc-00348, 2024 WL 4664721, at *6 (S.D.N.Y. Aug. 22, 2024) ("The fact that Petitioner intends to use the information sought by the subpoenas against the Zarzur Brothers in Brazil is insufficient for the Zarzur Brothers to have standing to challenge the Petition. Otherwise, any non-party would have standing to object to a subpoena as long as the information sought will be used against the non-party, even if the non-party asserts no privilege in connection with that information. Such a broad reading of <u>Sarrio</u> is inconsistent with the longstanding rule that a third party has no standing to object to subpoenas issued to non-party respondents absent an asserted privilege."); <u>see also</u> <u>Brown v. State St. Corp.</u>, No. 05-cv-11178, 2006 WL 8458183, at *3 (D. Mass. Mar. 20, 2006) (discussing split in authority and collecting cases).

where intervenor was a party to the foreign proceeding and applicant "clearly" sought "to use [the discovery] against the proposed intervenor"); In re Costa Pinto, No. 21-mc-00663, 2022 WL 4088012, at *4 (S.D.N.Y. Sept. 6, 2022) ("The Intervenors have an 'interest relating to the property or transaction that is the subject of the action' because, as the parties that engaged in the disputed transaction, they have privacy interests in the financial and legal documents that Petitioner hopes to use against them in Brazilian legal proceedings."); In re JSC BTA Bank, 577 F. Supp. 3d 262, 265 (S.D.N.Y. 2021) (granting motion to intervene on non-party subpoena "in light of [applicant's] stated intention to use the records against" movant).  The Doe Intervenors are not parties to the Singapore Proceeding and, despite their speculation to the contrary, [ECF No. 63 at 3], have not otherwise been identified as "targets" of that proceeding.  Those parties that are targets of the Singapore Proceeding, such as Smart River Investments Limited ("SRIL"), have already been permitted to intervene in this action.  [ECF No. 25].

To the extent that the Doe Intervenors rely on a more generalized confidentiality interest in their financial documents, their opening brief fails to point to any authority that this interest is enough to warrant intervention as a matter of right, see [ECF No. 16 at 6], and the authority cited in their reply brief is inapposite.  Specifically, in their reply brief, the Doe Intervenors point to two cases for the proposition that a confidentiality interest in banking records is sufficient for intervention as a matter of right.  [ECF No. 63 at 2 (first citing Degrandis v. Children's Hosp. Bos., 203 F. Supp. 3d 193 (D. Mass. 2016); and then citing State St. Corp. v. Stati, No. 20-cv-12052, 2021 WL 2117187 (D. Mass. Feb. 9, 2021), report and recommendation adopted, No. 20-cv-12052, 2021 WL 1010697 (D. Mass. Feb. 25, 2021))].  Degrandis, however, involved a proposed intervenor who had a legal privilege in information sought from a third-party, not simply a confidentiality interest.  203 F. Supp. 3d at 198.  Moreover, while it is true that the court

in Stati recognized an "interest in maintaining privacy and confidentiality" in bank records, it did

so only for the purpose of weighing interests in considering a protective order; it said nothing to

whether such an interest would establish intervention as a matter of right.  2021 WL 2117187, at

*14.  In other words, both cases are a far cry from the Doe Intervenors present request, and,

without more, the Court declines to hold that the Doe Intervenors unspecified "privacy" interest

in their financial records is sufficiently concrete to warrant intervention by right.[3]

That said, the Court ultimately need not resolve the dispute as to whether the Doe

Intervenors have established that they can intervene as a matter of right because it sees no reason

why their request for permissive intervention should not be granted.  Pursuant to Rule 24(b), the

Court "may," on a timely motion, "permit anyone to intervene who . . . has a claim . . . that

shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).

"Permissive intervention is 'wholly discretionary,' and a court should consider whether

intervention will prejudice the existing parties or delay the action."  In re Bos. Sci. Corp. ERISA

Litig., 254 F.R.D. 24, 33 n.82 (D. Mass. 2008) (quoting In re Sonus Networks, Inc. Sec. Litig.,

229 F.R.D. 339, 345 (D. Mass. 2005)).  "[A] district court's discretion to grant or deny motions

for permissive intervention is very broad."  T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d

33, 42 (1st Cir. 2020) (citations omitted).  The Court may consider various factors to determine

---

[3] Although it need not reach the issue, based on its knowledge of the parties, the Court is equally
skeptical that the Doe Intervenors have met their burden to demonstrate that their interests are
not adequately protected by existing parties.  The Doe Intervenors offer little more than vague
and conclusory assertiond that "[n]o other existing parties adequately represent" their interests,
[ECF No. 16 at 6], and that SRIL "is a distinct entity, and, as a party to the Singapore
Proceeding, is situated differently," [ECF No. 63 at 4].  Setting aside the fact that SRIL, as a
party to the Singapore Proceeding, would, if anything, likely have a stronger interest in quashing
an overbroad subpoena, these conclusory assertions do not carry the burden.  In re BM Brazil 1
Fundo De Investimento EM Participacoes Multistrategia, No. 23-mc-000208, 2024 WL 554302
(S.D.N.Y. Feb. 12, 2024).

whether permissive intervention is warranted.  See id. at 41–42 (explaining that "a district court mulling permissive intervention is free to consider whether 'the applicants may be helpful in fully developing the case,'" and whether "'more parties would complicate' matters unnecessarily").

The Doe Intervenors' motion to quash the *ex parte* subpoena and accompanying arguments will certainly share common questions of law or fact with the other motions to quash that are forthcoming in this action, and Applicants do not explain how they will be otherwise prejudiced or unduly delayed by responding to an additional motion.  See In re Application of Grupo Unidos Por El Canal S.A., No. 14-mc-80277, 2015 WL 1815251, at *5 (N.D. Cal. Apr. 21, 2015) (permitting third party to intervene to quash subpoena issued pursuant to § 1782, explaining that the motion to quash would "indisputably share many common questions of law and fact with [the] underlying Section 1782 application, i.e., whether [applicant's] request for discovery meets the statutory requirements of 28 U.S.C. § 1782, and, if so, whether the discretionary factors identified in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) counsel in favor of granting [applicant's] application"). Additionally, although the Court is not convinced that it meets the requirements of Rule 24(a), the Doe Intervenors certainly have some confidentiality and/or privacy interest in their own financial records, which warrants an opportunity to permissively intervene to protect that interest.  In re Hornbeam Corp., No. 14-mc-00424, 2015 WL 13647606, at *3 (S.D.N.Y. Sept. 17, 2015), aff'd, 722 F. App'x 7 (2d Cir. 2018) (permitting third party to intervene to quash subpoena issued pursuant to § 1782 that would implicate his "personal financial information").  As such, the Doe Intervenors motion to intervene is **GRANTED**.

8

B.      **Motion to Proceed under a Pseudonym**

The Doe Intervenors additionally seek permission to proceed in this action under

pseudonyms to protect their identifies from disclosure.  [ECF Nos. 19, 20].  "[T]here is a 'strong

presumption against the use of pseudonyms in civil litigation,'" Doe v. MIT, 46 F.4th 61, 67 (1st

Cir. 2022) (quoting Does 1–3 v. Mills, 39 F.4th 20, 24 (1st Cir. 2022)), but it may be appropriate

in "exceptional cases," id. at 70 (quoting Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011)).

That is because "[l]awsuits in federal courts frequently invade customary notions of privacy

and—in the bargain—threaten parties' reputations." Id.  Thus, the First Circuit has held that

anonymity may be warranted in the following exemplary and exceptional cases: (1) the "would-

be Doe . . . reasonably fears that coming out of the shadows will cause him unusually severe

harm (either physical or psychological)," (2) "identifying the would-be Doe would harm

innocent [non-parties]," (3) "anonymity is necessary to forestall a chilling effect on future

litigants who may be similarly situated," which "typically arises in cases involving intimate

issues such as sexual activities . . . medical concerns, or the identity of abused minors," and (4)

the suit is "bound up with a prior proceeding made confidential by law." Id. at 71 (internal

quotations and citations omitted).  In considering these factors, "[t]he party seeking

pseudonymity bears the burden of rebutting the strong presumption against it." Id. at 73.  That

said, the First Circuit has also cautioned that, "because "[c]ivil actions come in a wide variety of

shapes and sizes," it is "not so sanguine as to believe that these four paradigms capture the entire

universe of cases in which pseudonymity may be appropriate." Id. at 72.  Rather, "these

paradigms are framed in generalities," and thus "a court enjoys broad discretion to quantify the

need for anonymity in the case before it." Id.  "This broad discretion extends to the court's

ultimate determination as to whether that need outweighs the public's transparency interest." Id.

9

The Doe Intervenors assert that they fall into the second <u>MIT</u> paradigm.  They contend that because "disclosure of [their] names is itself one of the harms sought to be prevented by intervention," the Doe Intervenors should not be "forced to disclose their identities at this early stage," arguing that "even if [the Court] were to grant the motion to quash in whole or in part, [it] [would not be able to] 'unring the bell' of this injury."  [ECF No. 20 at 2].  In addition, they contend that public disclosure of their identities could lead to harassment given that "there are widely reported instances of hacking, kidnapping, extortion, and other harmful acts penetrated against executives and investors in the cryptocurrency space."  [ECF No. 21 ¶ 7].  They further assert that "the public has little, if any, interest" in their identities, particularly given that they "did not affirmatively avail themselves of this Court's protections, but are instead nonparties who are being forced to litigate to protect their confidential financial documents."  [ECF No. 20 at 2].  Applicants counter that the Doe Intervenors are "factually differently situated than the parties that courts have allowed in the past to proceed under a pseudonym, not least because they are corporations incapable of suffering physical or psychological harm."  [ECF No. 53 at 3]; <u>see also</u> [<u>id.</u> at 4–8].

The Court is exceedingly skeptical that this case is analogous to those where anonymity has been permitted under the second <u>MIT</u> paradigm.  <u>See, e.g.</u>, <u>Doe v. Trs. of Dartmouth Coll.</u>, No. 18-cv-00040, 2018 WL 2048385, at *6 (D.N.H. May 2, 2018) (involving non-party victim of sexual assault); <u>MIT</u>, 46 F.4th at 73 (same); <u>Doe v. Del Toro</u>, No. 1:23-cv-13112, 2024 WL 816511, at *2 (D. Mass. Feb. 27, 2024) (plaintiff victim of sexual assault). Nonetheless, the Court is sympathetic to the Doe Intervenor's argument that the Court will have let the proverbial cat out of the bag and rendered their forthcoming motion to quash moot if it denies this motion to proceed pseudonymously precipitously.  <u>Patrick Collins, Inc. v. Does 1–38</u>, 941 F. Supp. 2d 153,

161 (D. Mass. 2013) (granting motion to proceed under a pseudonym where movants intended to "challeng[e] the subpoenas served on their ISPs for the very purpose of protecting their personal identifying information from disclosure").  Given both the unique procedural posture of this § 1782 proceeding and the First Circuit's guidance that "civil actions come in a wide variety of shapes and sizes," MIT, 46 F.4th at 72, out of an abundance of caution, the Court will exercise its discretion to **GRANT** the Doe Intervenors motion to proceed pseudonymously vis-à-vis the public for the limited purpose of moving to quash the subpoena.  Should the Doe Intervenors lose their motion to quash the subpoena, they will be required to reveal their identities for any future filing in this action.

That said, the Doe Intervenors also seek to keep their identities secret from Applicants, both in their motion to intervene, [ECF No. 20 at 8–9], and their motion for a protective order, [ECF No. 58].  The Court addresses this below.

C.    **Motion for Protective Order**

The Doe Intervenors have moved for a protective order which would permit them to designate as "Attorneys' Eyes Only" "any information or materials that may reveal the identities of the Doe Intervenors" submitted in connection with their motion to quash.[4]  [ECF No. 58 at 6]. They argue that such a protective order is necessary because they "have serious concerns regarding the potential harm that would result from the disclosure of their identities, whether from Applicants or third parties, including one incident in which certain of the Applicants contacted a third-party service provider purporting to relay instructions on behalf of DFGC when, in fact, DFGC had never authorized such instructions."  [Id. at 6–7].  Applicants counter

---

[4] The protective order would not govern any material that the Doe Intervenors ultimately may produce in response to the subpoenas issued in this action.  [ECF No. 58 at 2 n.2].

that the Doe Intervenors "do not articulate good cause as to why th[eir] identities and

confidential information should not be made known to Applicants, let alone why this information

should be permitted to be filed under AEO designation," in part because "the Doe Intervenors do

not even attempt to explain why they are similarly situation to DFGC, which had previously been

under the Applicants' control and . . .whose accounts the Applicants controlled before the theft

and conversion that is the basis of the underlying Singapore Proceeding." [ECF No. 67 at 5].

Federal Rule of Civil Procedure 26(c)(1) provides that a court may "for good cause,

issue an order to protect a party or a person from annoyance, embarrassment, oppression, or

undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).  Courts have "broad discretion to decide

when a protective order is appropriate and what degree of protection is required." ClearOne

Commc'ns, Inc. v. Chiang, 276 F.R.D. 402, 404 (D. Mass. 2011) (internal quotation marks and

citation omitted).  That said, "[a]ttorneys' eyes only disclosure is appropriate only in limited

circumstances, such as cases involving trade secrets, because it hinders the plaintiff's ability to

aid counsel in the review of the evidence and to determine her litigation strategy in light of it."

Theidon v. Harvard Univ., 314 F.R.D. 333, 336 (D. Mass. 2016).  The Doe Intervenors, as the

parties seeking protection, bear the burden of proving "good cause" by demonstrating a factual

basis concerning the risk of potential harm.  Fed. R. Civ. P. 26(c)(1); ClearOne Commc'ns, 276

F.R.D. at 403.

The Doe Intervenors have not met that burden here as they have not shown good cause as

to why the Applicants should not know their identities.[5]  They have not pointed to any sensitive

commercial information, trade secrets, or confidential research and development they seek to

---

[5] As to the public, their concerns are alleviated by this Court's ruling on the motion to proceed
under a pseudonym.

protect and which would fall more squarely within the bounds of circumstances where AEO designations are warranted.  See generally [ECF No. 58]; see also Theidon, 314 F.R.D. at 336. Rather, they contend that the Applicants should not know their identities because the Applicants may attempt to gain unauthorized access to their accounts, as Applicants allegedly did with DFGC.  [ECF No. 58 at 6–7].  The Court is unconvinced that Applicants' attempts to relay instructions on behalf of DFGC warrant a protective order.  Based on the § 1782 application, this Court understands that the Applicants initiated the Singapore Proceeding in part because they realized that the defendants in that action had allegedly misappropriated digital assets and the Applicants had been unsuccessful in their attempts to regain control of those assets, including those held by DFGC.  [ECF No. 3-1 ¶ 44].   Applicants then sought their subpoena here to help determine what became of those assets.  In other words, the incident that the Doe Intervenors point to as evidence that Applicants will harm or otherwise harass them is the very subject of the Singapore Proceeding, and the Court will not, at this point, make a judgment as to who the wrongdoer was with regard to that incident.  To the extent that the Doe Intervenors' records are implicated in that request, that is the purpose of the subpoena—not good cause for a protective order.  "While the [Doe Intervenors] would certainly prefer to keep th[eir] identities . . . secret from [Applicant], [they] ha[ve] not demonstrated that [they are] entitled to confidentiality under the law." Theidon, 314 F.R.D. at 336.

As such, the Doe Intervenors' motion for a protective order is **DENIED**.

III.     **CONCLUSION**

Therefore, the Doe Intervenors' motion to intervene, [ECF No. 15], and motion to proceed under a pseudonym, [ECF No. 19], are **GRANTED**.  The motion for a protective order, [ECF No. 57], is **DENIED**.

**SO ORDERED.**

March 24, 2025                                                                    /s/ Allison D. Burroughs
                                                                                 ALLISON D. BURROUGHS
                                                                                 U.S. DISTRICT JUDGE