UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re Application of<br><br>EXCHANGE UNION COMPANY; SHANGHAI HUIYIN GROUP CO. LTD.; SHANGHAI SHENGYI INFORMATION NETWORK CO., LTD.; and WO WEI DONG,<br><br>Applicants,<br><br>Pursuant to 28 U.S.C. § 1782 for Judicial Assistance in Obtaining Evidence for Use in a Foreign and International Proceeding | * * * * * * * * * * * * * * * | Civil Action No. 24-mc-91645-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

The Court previously granted an application by Wo Wei Dong ("Wo"), Exchange Union Company, Shanghai Huiyin Group Co. Ltd., and Shanghai Shengyi Information Network Co., Ltd. (together, "Applicants"), for subpoenas to be served on Fidelity Brokerage Services LLC, FMR LLC, National Financial Services LLC, and Fidelity Digital Asset Services LLC (together, the "Fidelity entities") pursuant to 28 U.S.C. § 1782. Thereafter, several parties intervened in the action and filed motions to vacate and quash. Now before the Court are Magistrate Judge Cabell's order on those motions ("the Order"), [ECF No. 132]; a motion by Intervenor Smart River Investments Limited ("SRIL") to designate the Order as a report and recommendation, [ECF No. 135]; and objections to the Order by SRIL, [ECF No. 144], Intervenors Doe I and Doe II (the "Doe Intervenors"), [ECF No. 142], and Intervenor Terence J. Culver ("Culver"), [ECF

No. 143]. For the following reasons, the motion to designate the Order as a report and recommendation is **DENIED AS MOOT**, and the objections are **DENIED** subject to the parties' compliance with the joint submission outlined in section V of this order, which should be filed within 28 days.

# I. BACKGROUND

## A. Parties

### 1. Applicants

Wo Wei Dong ("Wo") is a Chinese entrepreneur who owns Shanghai Huiyin Group Co. Ltd. ("Huiyin Group"), an investment firm. [ECF No. 3-1 ("Wo Decl.") ¶¶ 1, 12–13]. Huiyin Group, in turn, owns Shanghai Shengyi Information Network Co. Ltd. and Exchange Union Company. [Id. ¶ 15].

### 2. SRIL and DFGC

The application alleges that SRIL and Digital Finance Group Company ("DFGC") are subsidiaries of Huiyin Group, [Wo Decl. ¶ 3], that "held substantial investments" on its behalf, [ECF No. 3 ¶ 12]. Wo's wife, Sun Hongmin ("Sun") is the director and sole shareholder of SRIL and DFGC. [Id. ¶ 14]; [ECF No. 78-1 at 101–03]. The proceeding in Singapore that led to this action being filed concerns a dispute between Wo and Sun, as well as their children, Wo Quan and Wo Qi, who are aligned with Sun, over numerous assets, including those belonging to SRIL and DFGC. See [ECF No. 3-2 at 7–75].

### 3. The Fidelity Entities

Certain disputed assets belonging to SRIL and DFGC were held in two Fidelity accounts. [ECF No. 3 ¶ 11]. "Applicants lack[ed] knowledge as to which specific legal entity within the Fidelity enterprise" possessed the disputed assets, so they named the Fidelity entities as

respondents on the assumption that "between them, [they] undoubtedly have the sought-after discovery." [Id. ¶ 2].

#### 4. Terrence Culver

Culver managed and operated the disputed Fidelity accounts. [ECF No. 3 ¶ 35].

#### 5. Doe Intervenors

The Doe Intervenors[1] are "legal persons incorporated in foreign jurisdictions," [ECF No. 17 ¶ 3], that are "not parties to the civil dispute in Singapore," [id. ¶ 4], but whose documents would be produced if Fidelity complied with the subpoenas sought in this action, [id. ¶ 5]. [redacted] It is "organized and operating under the laws of Abu Dhabi Global Market" and is wholly owned by a holding company that is, in turn, owned by SRIL. [ECF No. 38 at 1]. [redacted]

### B. Procedural History

On December 13, 2024, Applicants filed their application, [ECF No. 3], which sought an order allowing the service of subpoenas on the Fidelity entities in connection with a pending proceeding in Singapore, [id. ¶¶ 11, 17, 61]. In the Singapore proceeding, Applicants seek to recover assets allegedly belonging to Wo and Huiyin Group. [Id. ¶ 11]. The application alleges that Wo's family members, including Sun and Wo Qi, conspired to "seize control of and misappropriate assets rightfully belonging to Mr. Wo," [id. ¶ 15], including those held by SRIL

[1] The Court previously ordered the Doe Intervenors to reveal their identities to Applicants. [ECF No. 87].

and DFGC, by asserting that Sun "has always been the ultimate beneficial owner" of the assets, [id. ¶ 56]. Wo's family members, with the involvement of Culver, [id. ¶¶ 14–15], allegedly used their control over certain accounts to transfer or dispose of assets against Wo's wishes, [id. ¶¶ 47–57]. The material requested by the subpoenas includes documents and communications concerning "the status and transactional history of the Fidelity Accounts, including information as to the recipients of withdrawals from the Accounts." [Id. ¶ 61]; see also [ECF No. 3-3 at 9–11 (subpoena of Fidelity Digital Asset Services LLC)]; [ECF No. 3-4 at 9–11 (subpoena of Fidelity Brokerage Services LLC)]; [ECF No. 3-5 at 9–11 (subpoena of FMR LLC)]; [ECF No. 3-6 at 9–11 (subpoena of National Financial Services LLC)].

The Court granted the application on December 20, 2024. [ECF No. 7]. On February 3, 2025, Culver and his spouse, Jessica Dineen ("Dineen"), filed a motion to quash, [ECF No. 10], which the Court subsequently denied for failure to comply with the Federal Rules of Civil Procedure and the district's local rules, [ECF No. 102]. On February 5, 2025, SRIL moved to intervene, [ECF No. 13]. The Doe Intervenors likewise moved to intervene, [ECF No. 15], and also to proceed under pseudonyms, [ECF No. 19]. On February 6, 2025, the Court granted SRIL's motion to intervene, [ECF No. 25], and on March 24, 2025, the Court granted the Doe Intervenors' motions to intervene and to proceed pseudonymously, [ECF No. 72]. On April 7, 2025, both SRIL and the Doe Intervenors moved to vacate the Court's order and quash the subpoenas. [ECF No. 76 (SRIL)]; [ECF No. 77 (Doe Intervenors)]. Applicants opposed the motions to quash on April 25, 2025, [ECF No. 94]; [ECF No. 97], and on April 30, 2025, SRIL and the Doe Intervenors filed replies, [ECF No. 98 (SRIL)]; [ECF No. 99 (Doe Intervenors)].

On May 28, 2025, the Court referred the case to the magistrate judge. [ECF No. 111]. On June 19, 2025, Culver and Dineen formally moved to intervene, [ECF No. 115], which the

magistrate judge allowed as to Culver and denied as to Dineen, [ECF No. 122]. On December 18, 2025, Culver filed a motion to vacate and quash, [ECF No. 127], which Applicants opposed on December 19, 2025, [ECF No. 129]. On January 12, 2026, the magistrate judge entered the Order at issue, which denied the motions to vacate and quash filed by Fidelity, SRIL, and the Doe Intervenors. [ECF No. 132].

On January 20, 2026, SRIL moved to designate the Order as a report and recommendation or, in the alternative, stay it. [ECF No. 135]. On January 26, 2026, the Doe Intervenors, Culver, and SRIL each filed objections to the Order. [ECF Nos. 142 (Doe Intervenors), 143 (Culver), 144 (SRIL)]. Applicants opposed the motion to designate the Order as a report and recommendation on February 3, 2026, [ECF No. 147], and SRIL replied on February 13, 2026, [ECF No. 150]. On February 20, 2026, Applicants opposed the various Intervenors' objections, [ECF No. 154], and on March 9, 2026, all Intervenors filed a single joint reply in support of their objections, [ECF No. 160].

Finally, on June 16, 2026, Applicants advised the Court that the Singapore court had "denied three applications to stay the Singapore Proceeding on forum non conveniens grounds," [ECF No. 164 at 1], and that the Singapore proceeding "will now proceed to trial," [id. at 2]. SRIL responded that the Singapore court's ruling "address[ed] only whether China or Singapore is the appropriate forum for that litigation" and that "[n]one of [SRIL]'s legal arguments before this Court depend on" that ruling. [ECF No. 165 at 1].

## II. STANDARD OF REVIEW

At the outset, the parties dispute what standard of review should apply to the Order. Intervenors argue that the Order is dispositive and should have been designated as a report and recommendation. E.g., [ECF No. 136 at 13]; [ECF No. 160-1 at 8–9]. Applicants respond that because it did not "dispose of 'a party's claim or defense,'" the Order, even if dispositive, should

be reviewed only for clear error. [ECF No. 147 at 9–10 (quoting Fed. R. Civ. P. 72)]. The First Circuit has not yet weighed in on whether § 1782 applications (or motions to quash subpoenas issued pursuant to those applications) can be resolved by order of a magistrate judge,[2] see In re Hand Held Prods., Inc., No. 24-mc-91378, 2024 WL 5136071, at *1 n.2 (D. Mass Oct. 24, 2024); In re Ex Parte Application of Pro-Sys Consultants & Neil Godfrey, No. 16-mc-91016, 2016 WL 4154306, at *1 (D. Mass. Aug. 5, 2016), and here, the Court need not resolve the question, because the only meaningful difference between the two standards of review concerns review of facts, see PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010) (citing Fed. R. Civ. P. 72(a)–(b)); Patton v. Johnson, 915 F.3d 827, 833 (1st Cir. 2019), and the Order did not make any factual findings on which the standard of review would change this Court's conclusion. Accordingly, the motion to designate the Order as a report and recommendation, [ECF No. 135], is moot.

[2] Though the "great majority of [district] courts to address the issue have found that a magistrate judge has jurisdiction to issue an order on a motion to quash," In re Pons, 614 F. Supp. 3d 1134, 1141 (S.D. Fla. 2020) (collecting cases), aff'd sub nom. Pons v. AMKE Registered Agents, LLC, 835 F. App'x 465 (11th Cir. 2020); accord In re Hulley Enters. Ltd., 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019), those courts generally assume, without explanation, that the foreign proceeding may be considered in determining whether the magistrate judge's order is dispositive. E.g., In re Pola Maritime Ltd., No. 16-cv-00333, 2018 WL 1787181, at *1 (S.D. Ga. Apr. 13, 2018) ("While the Magistrate Judge's order is dispositive [of] this discovery issue, it is not dispositive [of] the ultimate resolution of [the dispute before the foreign tribunal]."). On the other hand, the Ninth Circuit, which applies a similar functional test to the First Circuit, see ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC, 951 F.3d 41, 47 (1st Cir. 2020) (citing with approval the Ninth Circuit's approach), has concluded in a thoroughly reasoned opinion that "only the proceedings in federal court are relevant to determining whether a matter is case-dispositive," and that because an order disposing of a § 1782 application "effectively cut[s] off all avenues for relief in federal court," that order is dispositive for purposes of the powers of a magistrate judge, "even if [it] leave[s] major substantive issues to be determined by other tribunals," CPC Pat. Techs. Pty Ltd. v. Apple, Inc., 34 F.4th 801, 808 (9th Cir. 2022).

## III. LEGAL FRAMEWORK

Section 1782 authorizes interested persons to seek discovery in the United States for use in foreign proceedings. See 28 U.S.C. § 1782.

> Today's § 1782 is the product of over 150 years of Congressional effort and manifests the intent to provide "federal-court assistance in gathering evidence for use in foreign tribunals." The text of § 1782 provides that granting discovery is proper only if: 1) the person from whom discovery is sought "resides or is found" in the district where the court sits; 2) the request seeks evidence (the "testimony or statement" of a person or the production of a "document or other thing") "for use in a proceeding in a foreign or international tribunal"; 3) the request is made by a foreign or international tribunal or by "any interested person"; and 4) the material sought is not protected by "any legally applicable privilege." 28 U.S.C. § 1782(a). If all of these statutory requirements are met, the district court is authorized, but not required, to provide judicial assistance by permitting discovery.

In re Schlich, 893 F.3d 40, 46 (1st Cir. 2018) (first quoting Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004); and then quoting 28 U.S.C. § 1782). Courts must exercise discretion "in light of the twin aims of the statute: 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" Id. at 46–47 (quoting Intel, 542 U.S. at 252). Additionally, four factors established by the Supreme Court in Intel, 542 U.S. at 264–65, "bear consideration," In re Schlich, 893 F.3d at 47 (quoting Intel, 542 U.S. at 264):

> The first factor to consider is whether the person from whom discovery is sought is a party to the foreign proceeding, in which case "the need for § 1782(a) aid generally is not as apparent" because a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." [Intel, 542 U.S. at 264]. The second factor . . . was adopted from a Senate Report explaining that a court "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Id. (citing S. Rep. No. 88-1580, at 7 (1964), as reprinted in 1964 U.S.C.C.A.N. 3782, 3788 . . . ). The third factor to consider is whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Id. at 265 . . . . Finally, the fourth factor addresses whether the request is "unduly intrusive or burdensome" to the extent that it should either be "trimmed" or rejected outright. Id.

Id. "In sum, a district court must first determine whether the statutory requirements are met. If they are, the district court should then consider the four discretionary factors before arriving at a decision." Id.

## IV. DISCUSSION

The Court addresses only the portions of the Order to which a party has objected, which include the resolution of disputed facts, the statutory factors, and the discretionary Intel factors.

### A. Resolution of Disputed Evidence

As a general matter, SRIL objects that "Section 1782 does not allow a court to accept a petitioner's narrative by default or to disregard contrary record evidence" but rather "requires a critical review of the full record," and argues that the Order improperly "treated Petitioners' application as if it were a federal complaint challenged under Rule 12(b)(6) . . . [,] assum[ing] Petitioners' factual assertions were true, dr[awing] inferences in their favor, and discount[ing] [SRIL's] evidence with little analysis." [ECF No. 144 at 7]. SRIL asserts that the improper acceptance of controverted facts vaguely "permeates" the entirety of the Order's analysis. [Id. at 8]. To the extent that resolution of disputed facts would affect the outcome of any particular statutory or discretionary factor, the Court will address those facts in the corresponding section of its analysis. At the outset, however, the Court notes two particular contentions raised by SRIL.

SRIL faults the Order for failing to "engage with the extensive, unrebutted evidence that Mr. Wo has conducted a sustained campaign of harassment and intimidation against his wife and children," [ECF No. 144 at 7]; see [ECF No. 78-1 ¶ 14(b) (describing alleged harassment and intimidation)], which SRIL argues was relevant for purposes of analyzing "purpose, proportionality, [and] intrusion," [ECF No. 144 at 8]. The evidence of harassment and

intimidation identified by SRIL comes from two affidavits by Sun, [ECF No. 78-1];[3] [ECF No. 145-2];[4] a Singapore police report by Sun, [ECF No. 145-3],[5] and two affidavits by Wo Qi, [ECF

---

[3] Sun states that Wo became "angry, and he threatened [her] and the children numerous times in order to make [her] cooperate" when she refused to give false statements in his support while he was under investigation, [ECF No. 78-1 ¶ 14(b)], that her and Wo's relationship became "very strained due to his various threats arising from my refusal to give false testimony," [id. ¶ 35]; and that Wo harbored a grudge against Sun and that it was "against this backdrop that he has been aggressively pursuing this present action," [id. ¶ 41]. She further states that Wo "threatened to put Wo Qi in jail," [id.]; and that Wo's lawyers "ma[de] specific references to potential criminal offences" in a letter to Wo Qi, [id.]. The affidavit also attaches correspondence to Wo Qi, from a law firm on the Applicants' behalf, which notes the possibility of legal action and refers to potential violations of Singapore criminal law. [Id. at 199].

[4] Sun states that Wo "sent the housekeeper . . . and [Wo's] brother . . . to [one of Sun's apartments] to deliver" a legal memorandum that set forth "the maximum criminal punishment under Singapore criminal law that Wo Qi could face if [Wo's] allegations were true." [ECF No. 145-2 ¶¶ 21–22].

[5] The police report states that Wo called Sun and said: "So are you ready? Are you ready to go to jail? Losing all visas is a small matter, as well as losing your family in China and facing life, losing life. Are you ready?" [ECF No. 145-3 at 3]. SRIL suggests that this amounted to a death threat, [ECF No. 144 at 10], which is how Sun interpreted it, [ECF No. 145-3 at 6]. Applicants dispute that interpretation and argue that the phrase "losing life" should be translated as "ruining your whole life." [ECF No. 154-2 ¶ 6].

No. 78-4];[6] [ECF No. 145-1].[7] Even assuming the accuracy of SRIL's characterization,[8] however, such a harassment campaign would only be legally cognizable based on the statutory and discretionary factors, which the Court discusses at length below. Therefore, without weighing the evidence, the Court concludes that the alleged harassment campaign does not furnish an independent reason—apart from its effect, if any, on the statutory and discretionary factors—to quash the subpoenas.

SRIL also argues that the Order failed to consider "objective corporate records" showing that Sun was the "sole shareholder and director of both DFGC and [SRIL]." [ECF No. 144 at 11]. The Court has noted those records, and its analysis reflects its understanding that Sun is listed as sole shareholder and director of both companies.

---

[6] Wo Qi states that after she did not answer Wo's call concerning a dispute over trading activity because she was sick with a fever, Wo told her to "take a good rest and your ailments will be cured," because "you are mentally ill now, and the illness is serious, and if you do not treat and adjust, the price paid by you and your family will be unbearable," before concluding that if Wo Qi "want[ed] to communicate, there is still a chance." [ECF No. 78-4 ¶ 43]. She further states that after he was released from detention for bribing a government official, Wo called Wo Qi and said that he "would definitely ask [Sun] 'to pay the price'" for not helping him give false testimony, [id. ¶ 67(b)]; and that Wo Qi heard from her mother that Wo had "threatened . . . [to] send me to jail for more than 20 years," [id. ¶ 68].

[7] In this affidavit, Wo Qi states that while she was completing an MBA at the Wharton School of the University of Pennsylvania, Wo sent "an unknown individual" who "claimed to be a detective attempting to deliver a subpoena" to her residence "at least three times," that the individual "asked the building receptionist questions regarding where [Wo Qi] live[d] and [her] personal schedule," and that it made Wo Qi feel "threatened and concerned for [her] safety." [ECF No. 145-1 ¶ 31(a)]. She further states that Wo commissioned a legal "memorandum setting out the maximum criminal punishment under Singapore criminal law that I could face if [his] . . . allegations are true," and had the memorandum left "at my doorstep," from which Wo Qi concluded that Wo "intended to file a police report against [her]," which she took as "an implicit threat." [Id. ¶ 31(b)].

[8] Wo denies the harassment allegations and argues that the facts alleged in support of them either reflect misunderstandings or are misrepresentations of what happened. See [ECF No. 154 at 46–48]. The Court need not resolve this dispute for present purposes.

### B. Statutory Factors

The only disputed statutory factor is whether the evidence sought is "for use" in a foreign proceeding. 28 U.S.C. § 1782(a). Each of the Intervenors raises objections concerning this factor.

#### 1. SRIL

##### i. Legal Standard

First, SRIL argues that the Order "applied the wrong legal standard," [ECF No. 144 at 13], contending that "[t]he requested discovery must 'actually assist' the applicant in the foreign proceeding," [id. (quoting Khrapunov v. Prosyankin, 931 F.3d 922, 925–26 (9th Cir. 2019))]; [ECF No. 160-1 at 10], but that the magistrate judge's inquiry here instead improperly focused on relevance, [ECF No. 144 at 13–14]. It argues that the word "use" requires that the foreign tribunal will engage with the discovered information through, for example, "action and implementation," [id. at 13 (quoting Dubin v. United States, 599 U.S. 110, 118 (2023))], "active employment," [id. (quoting Jones v. United States, 529 U.S. 848, 855 (2000))], or "deriv[ing] service," [id. (quoting Astor v. Merritt, 111 U.S. 202, 213 (1884))]. Applicants disagree, noting that no court in this circuit has adopted an actual-assistance standard and arguing that while "information that is plainly irrelevant to the foreign proceeding" cannot be for use in that proceeding, the bar is low, and, in the alternative, that even if an actual-assistance standard applies, the discovery requests would meet that standard. [ECF No. 154 at 22–23]. On balance, the Court concludes that the magistrate judge committed no error.

While a discovery request must be "sufficiently relevant to be deemed 'for use' in a foreign proceeding," that requirement is not a high bar, as implicit in the First Circuit's treatment of evidence that will be "only marginally relevant"—due to "the nature of the foreign proceedings and the rules of the foreign tribunal"—as satisfying the for-use requirement. In re

Schlich, 893 F.3d at 52. That generous interpretation is consistent with the meaning of the phrase "for use in a foreign proceeding," id. at 43 & n.1 (citing 28 U.S.C. § 1782(a)), which refers only to the party's intent to employ the evidence in the foreign proceeding, not whether the party's employment of that evidence will actually be effective. Consistent with that understanding, the First Circuit has affirmed a district court's finding that the evidence sought was for use in a foreign proceeding where the party opposing discovery failed to raise a "plausible argument that the information sought would not be welcomed . . . in the [foreign] proceedings." In re Porsche Automobil Holding SE, 985 F.3d 115, 120 (1st Cir. 2021). A requirement that information not be unwelcome is less stringent than the actual-assistance requirement proposed by SRIL.

The cases offered by SRIL concerning the interpretation of the word "use" all derive from entirely different statutory contexts that do not furnish plausible comparators here. See Dubin, 599 U.S. at 116–17 (discussing criminal prohibition on "'use[]' [of] a patient's means of identification 'in relation to' healthcare fraud" (quoting 18 U.S.C. § 1028A(a)(1))); Jones, 529 U.S. at 854 (discussing criminal prohibition on destruction by fire of a building "used in . . . any activity affecting . . . commerce" (alterations in original) (quoting 18 U.S.C. § 844(i))); Astor, 111 U.S. at 203 (discussing customs-duties exemption for "wearing apparel in actual use and other personal effects"). The Court is satisfied that the discovery sought here is sufficiently related to the foreign proceeding to clear the for-use bar.

ii. Factfinding

Second, SRIL objects to the Order's acceptance of Applicants' proffer that "the information sought will 'support' them in the Singapore proceeding." [ECF No. 144 at 14 (quoting [ECF No. 3-2 ¶¶ 13–14])]. SRIL argues that the magistrate judge "accept[ed] the facts alleged as true[,] . . . dr[ew] all inferences in favor of [Applicants]," and failed to consider

SRIL's position that "Ms. Sun is the documented sole owner of Smart River and DFGC and Mr. Wo's claims of misappropriation are entirely unsupported." [Id. at 14–15]; see also [ECF No. 160-1 at 11 ("[T]he Decision . . . needed to 'consider[] all of the arguments and evidence,' and it did not." (third alteration in original) (quoting In re Schlich, 893 F.3d at 51))]. Effectively, SRIL faults the magistrate judge for failing to adopt its view of the correct outcome of the Singapore action. While the Court must look to "all of the arguments and evidence submitted by both parties," In re Schlich, 893 F.3d at 51, it will not resolve a discovery petition by speculating about the merits of an underlying foreign controversy. Whether the Applicants will prevail on their claims in the Singapore action does not bear on whether the discovery they seek in the United States will be used in that forum to support those claims.

iii. Spirit of Section 1782

Third, SRIL argues that the magistrate judge's inquiry on the for-use factor was too broad. They contend that he evaluated the requests as a whole and relied on "the spirit of section 1782," [ECF No. 144 at 15 (quoting [ECF No. 132 at 14])], rather than "determin[ing] which specific discovery satisfied the statutory demands," [id.]. To the contrary, the Order reflects a careful and diligent inquiry, see [ECF No. 132 at 15–17 (walking through each category of discovery and the reasons cited by Applicants for requesting it)], and on review, this Court reaches the same conclusion as the magistrate judge did as to each of the categories of discovery. Accordingly, the reference to "the spirit of section 1782," regardless of its accuracy, did not result in any methodological error in the magistrate judge's analysis.

iv. Applicants' Alleged Improper Purpose

Finally, SRIL argues that Applicants in fact seek to "use the requested discovery . . . to locate assets for potential U.S. enforcement of a hypothetical judgment in the Singapore Proceedings" and that the magistrate judge improperly failed to address this argument. [ECF No.

144 at 16]; [ECF No. 160-1 at 10–11]. The Court, weighing SRIL's argument de novo, disagrees that it must consider or speculate about Applicants' ultimate purpose in seeking the at-issue discovery. Though a § 1782 application may be rejected where "the discovery applicant ha[s] publicly stated that the discovery application [i]s being made to assist the applicant in filing a lawsuit against the discovery target in the United States," In re Postalis, No. 18-mc-00497, 2018 WL 6725406, at *5 (S.D.N.Y. Dec. 20, 2018); see also In re Gorsoan Ltd., 843 F. App'x 352, 354–55 (2d Cir. 2021) (rejecting application on the basis that the discovery sought was "unlikely to bear on the alleged fraud" at the center of the foreign dispute and that applicant's desire to use information to secure a contempt judgment in the foreign court was "too remote to satisfy § 1782 here"), in this case Applicants have offered reasons specific to the Singapore proceeding for seeking the requested discovery, and there is no indication that the information is actually being sought solely to advance some other actual or anticipated proceeding.[9]

Further, SRIL has not asserted any concrete reason to conclude that the Singapore proceeding is not the real reason Applicants seek the discovery at issue here, apart from Applicants' "desire for 'information as to where any assets have since been transferred,'" [ECF No. 144 at 16 (quoting [ECF No. 3 at 30])], and Wo's "intention to seek 'recovery of all [the contested] assets including the Fidelity Accounts,'" [id. (alteration in original) (quoting [ECF No. 3-1 ¶ 10])]. The mere fact that information uncovered by these discovery requests might also be useful in future enforcement actions does not contradict the proposition that Applicants are seeking the information for use in the Singapore proceeding, particularly where the statements by Applicants cited by SRIL are logical outgrowths of the remedy sought in the

[9] For the same reason, SRIL's argument that Applicants seek the information for harassment purposes is unavailing.

Singapore proceeding—namely, recovery of allegedly stolen assets. See In re Kuwait Ports Auth., No. 22-mc-00064, 2025 WL 1529798, at *2–3 (D.D.C. May 29, 2025) (rejecting argument that foreign discovery was being sought to prepare for a future proceeding in the United States because "statutory requirement" of a foreign proceeding in which the sought discovery would be used had been "unmistakably met").

**2. Doe Intervenors**

i. Legal Standard

First, the Doe Intervenors argue that the Order "misstates the standard" that resolves whether the evidence sought is for use in foreign proceedings. [ECF No. 142-1 at 13–14]. The Doe Intervenors contend that rather than a "'reasonable possibility' discovery could be used in the foreign proceeding," [id. at 14 (quoting [ECF No. 132 at 14–15])], Applicants were required to show that "discovery 'will be employed with some advantage or serve some use in the [foreign] proceeding," [id. (quoting Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 120 (2d Cir. 2015))], and that they had a "'practical ability' to place the Doe Intervenors' Fidelity records before the Singapore court," [id. (quoting In re BonSens.org, 95 F.4th 75, 80 (2d Cir. 2024))]. Applicants respond that this standard comes from the Second Circuit and should have no bearing on this Court's analysis; they separately object to the fact that the Doe Intervenors did not raise this argument in their initial motions to vacate and quash; and they finally contend that even under that standard, they have made the required showing. [ECF No. 154 at 24–25]. For the reasons explained above in relation to SRIL's actual-assistance proposal, the Court concludes that the Order applied the correct standard.

ii. Relevance of Documents Concerning Doe Intervenors

Second, the Doe Intervenors argue that the magistrate judge wrongly concluded that the documents concerning the Doe Intervenors' accounts met the minimal threshold of relevance to

the foreign proceeding, [ECF No. 142-1 at 15]; [ECF No. 160-1 at 19], contending that Applicants offered "little more than speculation as to the relevance of documents and communications regarding Doe Intervenors' Fidelity accounts," [ECF No. 142-1 at 15]. As to Doe I, it contends that "its ownership and operation by [Wo Quan] and its 2021 founding" are insufficient to establish its relevance to the Singapore proceedings, except for the speculative "inference that Doe I is 'funded' by Wo's supposed assets." [Id.]. As to Doe II, it claims that the mere "fact that Doe II is managed by Culver and is a wholly owned subsidiary of [a holding company that] . . . is itself a wholly owned subsidiary of SRIL," is similarly insufficient. [Id.]. Fundamentally, the Doe Intervenors challenge the lack of "any supporting evidence" for inferences that would make their accounts relevant to the Singapore proceedings and argue that the magistrate judge "repeat[s] [Applicants'] allegations as evidence," [id.], while "ignor[ing] the ample contrary evidence Doe Intervenors presented," [id. at 16].

Applicants respond that "the Doe Intervenors' . . . deep ties to Defendants are enough to raise serious questions as to their involvement in the alleged misappropriations" that are the subject of the Singapore proceeding, because "Doe I is . . . [a] vehicle for [Wo Quan's] personal investments" and "Doe II is operated by Culver" and entirely owned by SRIL through an intermediate holding company. [ECF No. 154 at 26–27]. They also argue that they should only be required to meet the relevance standard from Rule 26 of the Federal Rules of Civil Procedure, rather than any heightened burden. [Id. at 28].

The Court need not resolve what burden is applicable here because, as an affidavit by Culver filed with Doe Intervenors' original application to intervene says, "the Doe Intervenors are not identified by name in the subpoenas." [ECF No. 17 ¶ 5]. Rather, it appears that some of the Doe Intervenors' information falls within the general requests of the subpoenas, which target

entities with a relationship to DFGC, SRIL, Wo Qi, Wo Quan, Sun, or Culver. See, e.g., [ECF No. 3-3 at 2, 5]. Accordingly, for the reasons explained above, the general requests satisfy the for-use requirement, including insofar as they sweep in information about the Doe Intervenors. There is a separate discretionary factor under Intel to address overbroad requests, and the Court will revisit this issue in its discussion of that factor.

iii. Applicants' Alleged Improper Purpose

Finally, the Doe Intervenors argue that the discovery sought as to their accounts could only be used in "future hypothetical proceedings" and "subsequent litigation (such [as] post-judgment enforcement efforts)," and that these future uses amount to an "'improper purpose' for a Section 1782 application." [ECF No. 142-1 at 17 (quoting In re Postalis, 2018 WL 6725406, at *5)]. They contend that the magistrate judge rejected that argument "without substantive analysis." [Id.]. Analyzing it de novo, the Court disagrees with the Doe Intervenors' objection, which assumes "the irrelevance of the discovery as to the Singapore Proceeding," [id. at 18], and thus fails for the same reasons explained above, both because the subpoenas meet the minimal threshold necessary to satisfy the for-use requirement and because Applicants have articulated a clear explanation for the relevance of this information to the foreign proceedings.

**3. Culver**

Culver opposes the discovery application to the extent it seeks information about his personal bank account, asserting that such information cannot be "for use" in the Singapore action where he is not a party to that action and "Applicants have not established that Mr. Culver's personal bank accounts . . . are 'associated with the Defendants,'"[10] or "contain[] misappropriated assets." [ECF No. 143 at 11]; see also [ECF No. 160-1 at 21]. Culver contends

[10] References to "Defendants" include Sun, Qi Wo, DFGC, and SRIL, who are all defendants in the Singapore proceeding. See [ECF No. 3-1 at 16].

that the Order failed to consider or articulate its reasoning on the "for use" requirement as to this particular information. [ECF No. 143 at 11]. If it had, Culver argues, the Order would have concluded that because the Singapore proceedings do not concern Culver's personal accounts in any way, there is no basis for concluding that discovery concerning his personal information is "for use" in those proceedings. [Id.].[11]

Applicants respond that, like the Doe Intervenors, "Culver's deep ties to Defendants are enough to raise serious questions as to [his] involvement in the alleged misappropriation." [ECF No. 154 at 26]. They argue that because Culver worked for Wo, "set up DFGC's and [SRIL]'s Fidelity accounts," and later "t[ook] instructions from [the defendants in the Singapore proceedings]," there is reason to conclude that there was an agreement between those defendants and Culver. [Id. at 27]. Further, because Culver's "assistance" is recognized in the operative complaint in the foreign proceeding, they contend that discovery into his personal accounts will be relevant to that proceeding. [Id. (quoting [ECF No. 91-3 ¶ 69A(g)])]. As with the Doe Intervenors, Applicants argue that the relevance standard from the Federal Rules of Civil Procedure is all they need to meet to receive the discovery they seek from Culver. [Id. at 28]. Finally, they note that they "have already excluded six purely personal accounts from production," and that Culver's conduct in relation to the only remaining account "raise[s] suspicion[s]" of relevance to the Singapore proceeding because he has not offered "an affidavit confirming that the account does not contain funds from Defendants and other parties related to the Singapore Proceeding" or any other evidence of its irrelevance. [Id. at 29].

[11] Culver further suggests that Applicants are merely seizing the opportunity to "rummage through Mr. Culver's personal financial records." [ECF No. 143 at 11]. The Court observes that rummaging through another party's records is the essence of discovery; the issue here is whether the rummaging is authorized by the relevant statutory and discretionary factors.

As the Court already has reiterated, the for-use requirement is not meant to impose a particularly high bar, and Applicants have provided sufficient evidence that—as to the only remaining account at issue—the discovery they seek may be used in the foreign proceeding.

**4. Summary**

For the foregoing reasons, after de novo review of the objections discussed above and the portions of the magistrate judge's order to which the parties objected, the Court adopts the order's conclusion on the for-use requirement in full.

**C. Intel Factors**

**1. The Fidelity Entities' Status in the Foreign Proceedings**

Under Intel, the relevant question is whether the "foreign tribunal[, which] has jurisdiction over those appearing before it, . . . can itself order" the discovery sought in the § 1782 application. 542 U.S. at 264. In many cases, that inquiry is straightforward.[12] It is less so, however, if evidence is in the possession of both a participant in the foreign action and an unrelated nonparticipant. Where, as here, an applicant seeks records related to accounts belonging to participants in the foreign proceeding, but held at United States financial institutions, courts have formulated different approaches and reached different conclusions.

SRIL argues that "[f]or all intents and purposes [Applicants] are seeking discovery from . . . their opponent in the [foreign] litigation," [ECF No. 144 at 18 (second and third

[12] For example, it favors granting discovery in the United States where a nonparticipant has evidence that would "not [be] available [in the foreign proceeding] absent th[e] [district] court's assistance," In re Porsche Automobil Holding SE, No. 19-mc-91129, 2019 WL 5806913, at *7 (D. Mass. Nov. 6, 2019), report and recommendation adopted, 2020 WL 813710 (D. Mass. Feb. 19, 2020), aff'd, 985 F.3d 115 (1st Cir. 2021), but disfavors granting discovery where evidence is sought from the United States–based corporate affiliate of a participant in the foreign proceeding if the participant could produce the evidence itself, see In re Hand Held Prods., 2024 WL 5136071, at *5 (first citing In re CBRE Global Invs., No. 20-mc-00315, 2021 WL 2894721, at *9 (S.D.N.Y. Jul. 9, 2021); and then citing In re Belparts Grp., No. 21-mc-00062, 2021 WL 4942134, at *3 (D. Conn. Oct. 22, 2021)).

alterations in original) (quoting Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 85 (2d Cir. 2004))], and objects that the Order incorrectly looked to whether Fidelity was "a party or an affiliate of a party in the Singapore proceeding," [id. at 17 (quoting [ECF No. 132 at 19])]; [ECF No. 160-1 at 13], rather than whether the evidence sought was "available to the foreign tribunal," [ECF No. 144 at 17 (quoting In re Qualcomm Inc., 162 F. Supp. 3d 1029, 1039 (N.D. Cal. 2016)) (citing Frasers Grp. PLC v. Stanley, 95 F.4th 54, 59 (2d Cir. 2024))]. Noting that "[Applicants] asked for many of the same documents in Singapore," some of which "are plainly in [the Singapore] defendants' possession or control," [id.], SRIL contends that the Court should follow the approach of In re Valitus, Ltd., No. 20-mc-91133, 2020 WL 6395591 (D. Mass. Nov. 2, 2020), and resolve this factor against Applicants because "the requested information was 'in a party-opponent's possession in the foreign proceeding.'" [ECF No. 144 at 18 & n.8 (quoting In re Valitus, 2020 WL 6395591, at *6)].

Like SRIL, the Doe Intervenors object to the magistrate judge's focus on the fact that Fidelity is "outside the jurisdictional reach of the Singapore court," [ECF No. 142-1 at 19 (quoting [ECF No. 132 at 18])], contending that the "pertinent question," [id.], is "whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application," [id. (emphasis added) (quoting In re Klein, No. 23-mc-00211, 2023 WL 8827847, at *10 (S.D.N.Y. Dec. 21, 2023), aff'd sub nom. Klein v. Altara RK Invs. Ltd., 2025 WL 560106 (2d Cir. Feb. 20, 2025) (summary order))]; [ECF No. 160-1 at 20]. They note that Applicants "have already issued discovery requests" to the parties to the Singapore proceedings relating to the Fidelity accounts, [id.], and posit on that basis that Applicants are trying to accomplish an "end-run [around] directly seeking discovery from their adversaries in the foreign proceeding by serving § 1782

subpoenas on the adversaries' U.S.-based agents or archivists." [Id. at 20 (quoting In re Klein, 2023 WL 8827847, at *11)]. The Doe Intervenors ask the Court to focus on "the real part[ies] from whom documents are sought." [Id. (quoting Kiobel by Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 245 (2d Cir. 2018))].

Applicants respond that "the Court is not asked to consider whether the requested evidence is located extraterritorially, but whether the 'person from whom discovery is sought is a participant in the foreign proceeding,'" [ECF No. 154 at 33 (quoting In re Top Matrix Holdings Ltd., No. 18-mc-00465, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020))], and that the Court should distinguish the cases cited by SRIL and the Doe Intervenors. [Id. at 33, 35–37].

Ultimately, this factor favors discovery. The Court begins by noting that the cases identified by the Intervenors are not particularly persuasive. This case is easily distinguished from In re Valitus[13] because that case concerned discovery targeting a corporate affiliate (Bain Capital Holdings GP, LLC) of two parties in the foreign proceeding (Bain Capital Ltd. and Bain Capital Private Equity Europe, LLP), see 2020 WL 6395591, at *1, 6. This case can also be distinguished from Kiobel, which concerned an attempt to subpoena legal counsel for documents that had been sent to them "solely . . . for the purpose of American litigation," see 895 F.3d at 241, a circumstance not present here. See In re Klein, 2023 WL 8827847, at *11 ("Such subpoenas implicate unique concerns about lawyer-client relations . . . not presented by subpoenas to U.S. financial institutions."). Lastly, In re Klein, though reasonable from a policy

---

[13] In re Valitus is one of only two cases from this circuit identified by either group of Intervenors. See [ECF No. 142-1 at 19–21]; [ECF No. 144 at 17–18]; [ECF No. 160-1 at 13]. The other is Wang v. Long, No. 24-mc-12774, 2024 WL 5187704 (D. Mass. Dec. 20, 2024), a decision of this Court in which, of three parties from which discovery was sought, one party was a direct participant in the foreign proceeding and the other two parties were named because of their association with him, id. at *2. For obvious reasons, the instant facts are distinct.

perspective, is not wholly aligned with the reasoning in Intel, and unlike Intel, is not binding on this Court.[14]

Accordingly, the first Intel factor favors discovery. Other courts in this circuit that have considered § 1782 in analogous factual contexts have also resolved this factor in favor of discovery. E.g., In re Caterpillar Crédito, No. 22-mc-00568, 2024 WL 2972782, at *7 (D.P.R. June 13, 2024) (resolving factor in favor of discovery because Puerto Rico bank was "nonparticipant in the [foreign] proceeding"); In re Boustany, No. 24-mc-91065, 2024 WL 3677617, at *3 (D. Mass. Aug. 5, 2024) (resolving factor in favor of discovery because Harvard University, which allegedly had documents related to income of individual participant in foreign divorce proceedings, was "not a party" to those proceedings); cf. In re Porsche Automobil Holding SE, No. 19-mc-91129, 2019 WL 5806913, at *7 (D. Mass. Nov. 6, 2019) (resolving

[14] In re Klein interprets the relevant inquiry to be focused, "in substance," on the "records" sought, rather than on whether the parties are participants in the foreign proceeding. 2023 WL 8827847, at *11. That court reasoned that permitting discovery from "U.S.-based agents or archivists" of a participant in the foreign proceeding, such as its banking institutions, "would undermine the first Intel factor" by failing to "show appropriate deference to the foreign tribunal" and "invit[ing] foreign parties to end-run directly seeking discovery from their adversaries in the foreign proceeding." Id. at *11. Though this analysis is reasonable, it is at odds with the framework articulated by Intel. Under Intel, the necessary deference to the foreign tribunal is protected by the second and third factors, which concern whether that tribunal will be receptive to the evidence and whether the § 1782 application is an attempt to circumvent privileges and other discovery rules applicable in that proceeding. See In re Schlich, 893 F.3d at 47. The first Intel factor, on the other hand, is not concerned with the foreign tribunal at all; rather, it concerns "the need for § 1782(a) aid," 542 U.S. at 264, which it defines in relation to parties, not individual pieces of evidence. See, e.g., id. ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."). This approach is consistent with our judicial system's general approach to discovery, which proceeds by serving discovery requests on parties, rather than starting with a particular piece of evidence and then deciding which party will produce it. It also promotes efficient administration of § 1782 by not encumbering discovery proceedings in prolonged factual disputes about whether particular pieces of evidence are already within the reach of the foreign tribunal.

factor in favor of discovery because evidence was "not available absent this court's assistance"), report and recommendation adopted, 2020 WL 813710, aff'd, 985 F.3d 115 (1st Cir. 2021). Courts in other circuits presented with similar facts have also found in favor of discovery. See, e.g., In re Ernesto Andrade Grp., 712 F. Supp. 3d 438, 441 (S.D.N.Y. 2024); In re Inv. Bank PSC, 567 F. Supp. 3d 449, 451 (S.D.N.Y. 2021); In re Wang, No. 25-mc-00037, 2025 WL 2633171, at *2 (C.D. Cal. Aug. 11, 2025); In re Kuwait Ports Auth., No. 22-mc-00064, 2024 WL 4183210, at *6 (D.D.C. Aug. 6, 2024). But see In re Klein, 2023 WL 8827847, at *10.

**2. The Nature and Receptivity of the Proceedings**

i. Whether Intervenors Bore a Burden

SRIL objects to the magistrate judge's remark that "[w]ithout 'authoritative proof' that the foreign court would not be receptive to discovery obtained through section 1782, a court should conclude that the second Intel factor weighs in favor of discovery." [ECF No. 132 at 20 (quoting Miyawaki v. Google LLC, No. 24-mc-80132, 2024 WL 2852142, at *3 (N.D. Cal. June 5, 2024))]; [ECF No. 160-1 at 13–14]. As SRIL notes, [ECF No. 144 at 18], the First Circuit has rejected the approach of other circuits, which place a "burden of proof on the party opposing discovery," concluding instead that "such a requirement is [un]necessary" and that the Intel factors do not "creat[e] a 'burden' for either party to meet, but rather [provide] considerations to guide the district court's decision." In re Schlich, 893 F.3d at 50.[15] The standard cited by the magistrate judge is not the law of this circuit. That said, the law of this circuit is not markedly different, providing that "a party who relies on a 'blanket assertion' or does not properly substantiate its contentions runs the risk of not persuading the court to exercise its discretion in

[15] As to the statutory factors, by contrast, the party seeking discovery bears the burden. Id. at 49.

its favor." Id. at 50. The Court finds no error in the magistrate judge's conclusion that the second Intel factor favors the Applicants.

ii. Status of the Foreign Proceedings

SRIL previously argued that "the nature of the foreign proceedings . . . relegate[s] the information to marginal relevance," [ECF No. 144 at 18 (alterations in original) (quoting In re Schlich, 893 F.3d at 52)], because the Singapore proceedings were not in discovery at the time of briefing. [Id. at 18–19]. Similarly, Doe Intervenors contended that a stay was likely in the Singapore Proceedings and argued that such a stay "would, by necessity, obviate the need for further [foreign] discovery." [ECF No. 142-1 at 21]. These arguments appear to be moot in light of subsequent developments in the Singapore proceedings, see [ECF No. 164], and the Court would reject them even if they were still justiciable, because "Intel requires only that the proposed discovery's use be 'within reasonable contemplation,'" In re Porsche, 985 F.3d at 120.

**3. Circumvention**

i. Specific Proof-Gathering Limits

SRIL argues that the magistrate judge overlooked evidence of "specific Singapore proof-gathering limits" and that "Petitioners are . . . using Section 1782 to avoid," these narrower discovery procedures. Further, it claims that the magistrate judge was mistaken in concluding that "no Intervenor has identified a Singaporean discovery rule that [Applicants] would appear to be seeking to circumvent." [ECF No. 132 at 20–21]; [ECF No. 144 at 19]; [ECF No. 160-1 at 14–15].

The Court disagrees. The fact that SRIL has "cited Singaporean discovery rules narrower than U.S. rules" and shown that Applicants have "already requested many of the same documents in Singapore," [ECF No. 160-1 at 14–15], is not circumvention in the context of § 1782 jurisprudence. The "fact that more evidence may be obtained via a § 1782 application

than via the foreign discovery procedures does not amount to circumvention and does not militate against approval of the application." Illumina Cambridge v. Complete Genomics, Inc., No. 19-mc-80215, 2020 WL 820327, at *5 (N.D. Cal. Feb. 19, 2020) (collecting cases). Rather, proof-gathering restrictions in this context "are best understood as rules akin to privileges that prohibit the acquisition or use of certain materials," Mees v. Buiter, 793 F.3d 291, 303 n.20 (2d Cir. 2015), and no party has identified such a privilege, see [ECF No. 80 at 21–22]. As such, the Court does not find that Applicants are engaged in circumvention here.

ii. Duplicative Discovery

SRIL and Doe Intervenors also assert that "where a duplicative discovery request exists in the underlying foreign proceeding[,] . . . the foreign court should 'determine in the first instance whether the requested information is material.'" [ECF No. 144 at 20 (quoting [ECF No. 80 at 21–22]) (citing In re Microsoft Corp., 428 F. Supp. 2d 188, 195–96 (S.D.N.Y. 2006), abrogated on other grounds by In re del Valle Ruiz, 939 F.3d 520 (2d Cir. 2019))]; accord [ECF No. 142-1 at 22 (arguing that because Applicants have "already demanded discovery regarding the Fidelity Accounts in the Singapore Proceedings, which [demands] have not yet been resolved," the requests at issue here are a "duplicative effort to obtain records [Applicants] already requested, and may not receive, in the Singapore Proceedings")]. They object to the magistrate judge's framing of this position as "suggesting a foreign exhaustion requirement," [ECF No. 144 at 20]; accord [ECF No. 142-1 at 22], but the Doe Intervenors do not offer a clear alternative interpretation. SRIL's position is that because Applicants "already asked DFGC and [SRIL] about the Fidelity accounts" in the Singapore proceedings, they "should not be permitted to seek a second bite of the apple here." [ECF No. 144 at 20]. Whether this approach is rightly

characterized as an "exhaustion requirement" or not, the Court finds no support for it in the law of this circuit on § 1782 applications, and the parties have provided none.[16]

iii. Culver

Culver, addressing the third Intel factor, raises a similar argument to that raised by SRIL and the Doe Intervenors as to the second, contending that these discovery requests are "premature because discovery is not underway in the foreign proceeding." [ECF No. 143 at 18 (citing Norex Petrol. Ltd. v. Chubb Ins. of Can., 384 F. Supp. 2d 45, 54 (D.D.C. 2005))]; see [ECF No. 160-1 at 21 ("[C]ourts routinely reject foreign discovery requests when discovery in the foreign proceeding is not ongoing.")]. For the reasons previously elaborated, the Court disagrees.

**4. Intrusion or Burden**

After reviewing the parties' objections concerning the scope and burden of discovery, the Court concludes that a protective order and some narrowing of the subpoenas is appropriate. It will order the parties to submit a joint proposal, the Court's acceptance of which will resolve almost all of the outstanding disputes under this factor. In the interest of thoroughness, however, it discusses the Intervenors' objections below.

[16] The out-of-circuit case cited by SRIL, In re Microsoft Corp., 428 F. Supp. 2d at 195–96, concerns a § 1782 application by Microsoft that sought documents submitted to a monitor appointed by the European Commission and to the Commission's technical advisors in connection with enforcement of an antitrust verdict by the Commission against Microsoft. Id. at 190–91. Because those documents may have been subject to European Commission rules "governing access to documents" filed in connection with Commission proceedings, and the Commission was in the process of deciding whether to disclose the documents pursuant to a discovery request by Microsoft filed in that forum, the district court concluded that the § 1782 application sought an end-run around the Commission's own disclosure rules governing documents filed with it. Id. at 195. A foreign tribunal's right to oversee access to filings from its own proceedings presents a distinct issue from the run-of-the-mill discovery dispute presented by this action.

First, SRIL objects that the subpoenas are overbroad, even if certain information might properly be for use in the foreign tribunal. [ECF No. 144 at 20]. It avers that the requested discovery "would capture any and all personal banking records and personal identifying information from [Wo's] family members and non-parties to the Singapore Proceedings." [Id. at 21]. It further notes that "when [Applicants] proposed a narrower subpoena in California, th[at] court recognized it was overbroad." [ECF No. 160-1 at 15 (citing In re Appl. of Exch. Union Co., No. 24-mc-80289, 2025 WL 2326057, at *8–10 (N.D. Cal. July 22, 2025))]. Similarly, the Doe Intervenors object to the Order on the basis that their records have been "ensnared by Petitioners' catch-all requests," and because the subpoenas "are exceedingly intrusive as to Doe Intervenors' sensitive business information," and argue that the Order failed to "address [this] central argument." [ECF No. 142-1 at 24]; see also [ECF No. 160-1 at 20]. Culver, too, argues that the Order did not consider his "privacy and confidentiality interests in his personal financial information." [ECF No. 143 at 15]; see [ECF No. 160-1 at 22]. The Court finds here that those generalized concerns around privacy can be addressed by a reasonable protective order and that any undue burden on Fidelity can be mitigated by narrowing the discovery requests.

Second, the parties raise certain specific objections. SRIL contends that Wo's "history of harassment" should be considered in connection with the intrusion-and-burden inquiry, which the Order failed to do. [ECF No. 144 at 22]; [ECF No. 160-1 at 16]. Though that history might be relevant to production of information such as "home addresses," [ECF No. 144 at 22 (quoting In re Appl. of Exch. Union Co., 2025 WL 2326057, at *10 n.12)], the Court sees no connection between any history of harassment by Wo and any intrusion or burden related to the production of financial records, provided that personal information is subject to a reasonable protective order.

The Doe Intervenors object to the Order's purported failure to "meaningfully address the disclosure issues inherent to Doe II's records, which are strictly regulated by the [Abu Dhabi Global Market] and subject to restrictions on disclosure pursuant to the [Abu Dhabi Global Market's Financial Services Regulatory Authority]." [ECF No. 142-1 at 19]. It appears, however, that any concerns related to disclosure by an entity regulated by the Abu Dhabi Global Market can be mitigated by seeking prior approval from that entity. See [ECF No. 84-5 ¶ 9(e)]. Accordingly, the Court is confident that the parties can work out a reasonable solution such that Doe II can comply with the subpoenas without running afoul of applicable disclosure rules.

The Doe Intervenors and Culver both seek a heightened review of the burden placed on them by the discovery requests, arguing that the Order did not fairly "consider the burden placed on [them]" in light of their status "as [non-parties] to the Singapore Proceedings." [ECF No. 142-1 at 25 (first citing Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998); and then citing 28 U.S.C. § 1782(a))]. Culver contends that he should be treated as a nonparty and, as such, is entitled to a "more demanding variant of the proportionality analysis," [ECF No. 143 at 14 (quoting Va. Dep't of Corr. v. Jordan, 921 F.3d 180, 189 (4th Cir. 2019))]; see [ECF No. 160-1 at 22]. The Court notes that the Applicants have already narrowed the scope of the subpoena as it pertains to Culver and now seek information related to only one of his accounts. Provided that the subpoena's scope is tailored to identify information related to SRIL, DFGC, and the Singapore proceedings, and made subject to a reasonable protective order, the narrowed subpoena sufficiently protects Culver as a nonparty to that proceeding. As to the Doe Intervenors, the Court notes that both are closely related to parties to the Singapore proceedings, and it appears that their information will, in any case, only be disclosed insofar as they were counterparties to transactions involving parties to those proceedings. Any further disputes

between these parties, such as Culver's concerns about the privacy of his personal financial information, see [ECF No. 143 at 15], can be resolved by a reasonable protective order and collaborative narrowing of the at-issue discovery requests.

### D. Other Matters

#### 1. Notice

SRIL objects that the subpoenas should be quashed based on "lack of prior notice," [ECF No. 144 at 22 (quoting Cootes Drive LLC v. Internet L. Libr., Linc., No. 01-cv-00877, 2002 WL 424647, at *2 (S.D.N.Y. Mar. 19, 2002))], and that the Order "failed to consider" the issue, [ECF No. 160-1 at 17]. As fully developed in its memorandum in support of its motion to quash, SRIL argues that Applicants were required to—and agreed to—"give [SRIL] notice and a copy of the subpoena before serving Fidelity," which they failed to do. [ECF No. 80 at 25]. The magistrate judge concluded that any notice-based objection was moot because "the Applicants re-served the subpoenas on Fidelity after providing notice to SRIL, and SRIL has now had the chance to fully brief the issue and lodge its objections," and further because "it is not clear how [the freezing of accounts while motions are pending] might also amount to prejudice against SRIL or any [other] intervenor where the intervenor could still press [its] arguments before the court." [ECF No. 132 at 22 n.13]. SRIL contends that this was error because "many courts have quashed subpoenas for 'lack of prior notice' without regard to prejudice," [ECF No. 144 at 22 (quoting Cootes Drive, 2002 WL 424647, at *2)], and it would be inappropriate to impose a prejudice requirement here, because Applicants allegedly flouted notice requirements in another related proceeding, [id. at 23 (citing In re Exch. Union Co., No. 24-mc-80289 (N.D. Cal. Mar. 24, 2025), Dkt. No. 18 at 15)], and "notice is especially critical in Section 1782 cases," [id.]. "Even if prejudice were required," SRIL argues, it could show prejudice because its "accounts were frozen before it could address the subpoena," which has amounted to prejudice in other contexts. [Id. at 23–24].

Applicants respond that under the Federal Rules of Civil Procedure, "the general rule is 'that the consequence of untimely notice should not be an automatic quashing of the subpoena, at least in the absence of prejudice to the opposing party,'" [ECF No. 154 at 49 (quoting 9A Wright & Miller's Federal Practice & Procedure § 2454 (3d ed.))], and that several other courts have permitted re-serving of subpoenas to cure any notice defects, both in the § 1782 context and otherwise. See [id.]. They further argue that the reference to a "party" to whom notice must be provided may not include parties to foreign proceedings. [Id. at 49–50]. Fundamentally, Applicants emphasize that SRIL "articulates no prejudice from the purported lack of notice," and dispute that "earlier notice" would have enabled SRIL to avoid its accounts being frozen upon receipt of the subpoenas. [Id. at 50].

On balance, the Court agrees with the magistrate judge's analysis of this issue. SRIL has suffered no long-term prejudice in its ability to litigate this dispute, or any lasting harm from the alleged lack of prior notice, and accordingly, there is no reason to quash otherwise proper subpoenas.

**2. Standing**

Finally, SRIL argues that Applicants lack Article III standing. The Court understands the argument on this point to amount to a general challenge to standing in § 1782 cases, since the reasons offered for Applicants' lack of standing are common to all such proceedings. SRIL frames the injury on which Applicants' standing is based as "the denial of information purportedly relevant to a foreign lawsuit." [ECF No. 144 at 25]. SRIL first contends that Applicants lack any concrete injury other than a non-actionable "purported informational injury," and then that Petitioners have failed to show that any such "harm is similar to one traditionally actionable in American courts," as required by Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016). [Id.]. Finally, it argues that Applicants have failed to show imminence. [Id. at 26].

Applicants respond by observing (correctly, it appears) that adopting SRIL's position would make "this Court . . . the first in the nation to declare § 1782 functionally unconstitutional." [ECF No. 154 at 51]; see also [ECF No. 136 at 22 (conceding that this is "an issue of first impression")]. They direct the Court to Akebia Therapeutics, Inc. v. FibroGen, Inc., 793 F.3d 1108 (9th Cir. 2015), in which the Ninth Circuit concluded that § 1782 petitioners have a statutory right to receive information to which they are entitled by statute, and that their counterparty's failure to disclose such information amounts to an injury sufficient to establish standing. [ECF No. 154 at 52]. Intervenors rejoin, see [ECF No. 160-1 at 18], that Akebia Therapeutics preceded Spokeo, 578 U.S. at 330, and TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), which held that plaintiffs must "identif[y] a close historical or common-law analogue," though not "an exact duplicate," for the injury on which they base their standing. TransUnion, 594 U.S. at 424 (citing Spokeo, 594 U.S. at 341).

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Spokeo, 578 U.S. at 337 (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)). Standing doctrine, which is "rooted in the traditional understanding of a case or controversy[,] . . . ensure[s] that federal courts do not exceed their authority as it has been traditionally understood." Id. at 338 (citing Raines, 521 U.S. at 820). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The party seeking to bring the lawsuit "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (quoting Lujan, 504 U.S. at 560). A party "does not 'automatically satisf[y]' Article III's requirements

simply because [a statute] grants [it] 'a statutory right and purports to authorize [it] to sue to vindicate that right.'" Wiener v. MIB Grp., Inc., 86 F.4th 76, 84 (1st Cir. 2023) (quoting Spokeo, 578 U.S. at 341) (citing TransUnion, 594 U.S. at 426). Rather, it must identify an injury that "actually exists" and "affect[s] the [party] in a personal and individual way," id. (alteration in original) (quoting Spokeo, 578 U.S. at 339–40), and that injury must have "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," TransUnion, 594 U.S. at 424 (quoting Spokeo, 578 U.S. at 341).

The Court is not persuaded by SRIL's contention that the only injury on which Applicants may rely is the denial of the information they seek. The resolution of the underlying Singapore proceeding will likely allocate an enormous sum of money, and the information that Applicants seek here—to which they are entitled by statute—will bear directly on their likelihood of succeeding in that proceeding. Accordingly, Applicants' financial interests in the underlying proceeding, which are at the core of the interests recognized by the history and tradition of American legal practice, provide adequate basis for their attempt to recover the information at issue here. See Food Mktg. Inst. v. Argus Leader Media, 588 U.S. 427, 433 (2019) (holding that grocery industry association had standing to challenge anticipated disclosure of members' SNAP redemption data because "disclosure likely would cause them some financial injury").

Because Applicants' prospect of being unable to prove their case in a foreign proceeding is a sufficient injury for purposes of Article III standing, the Court finds the remaining factors are also satisfied. That diminished likelihood of success is fairly traceable to the Fidelity entities' refusal to provide the records that Applicants seek, and an order requiring discovery would

redress the harm. The Court presumes that this logic is implicit in the countless judicial opinions granting discovery pursuant to § 1782 since TransUnion was decided.

## V. NARROWING OF SUBPOENAS AND PROTECTIVE ORDER

Applicants have established their eligibility under the § 1782 statutory factors and, in its discretion pursuant to the Intel factors, the Court concludes that Applicants are entitled to discovery concerning the movement of funds belonging to SRIL and DFGC—including the identity of individuals or entities to which such funds may have been transferred. As explained above, however, some narrowing, and a reasonable protective order, are appropriate to address any concerns that the outside reaches of Applicants' proposed subpoenas might go too far. Accordingly, the parties are instructed to confer and submit a joint proposal for (1) a protective order governing all private information disclosed pursuant to the subpoenas and (2) jointly agreed limits on the disclosures pursuant to the subpoenas to ensure that Applicants learn the identities of all counterparties to transactions involving SRIL or DFGC's Fidelity accounts, and any other information reasonably necessary to understand the current status of assets previously in SRIL or DFGC's accounts, without burdening the Fidelity entities with producing unduly cumulative documents or delivering to Applicants information entirely unrelated to the location of SRIL and DFGC's assets. That filing is due within 28 days of this order.

Though the Court leaves the particular contours of discovery to be hashed out by the parties, it emphasizes that this is not an opportunity to further litigate issues on which the parties have already submitted hundreds of pages of filings. Applicants are entitled to substantially all of the discovery they seek, subject to (1) appropriate limitations to avoid burdensome or intrusive disclosure of information that does not identify assets belonging to SRIL or DFGC and recipients of transfers of such assets or have some other relevance to the foreign proceeding, and (2) an appropriate protective order to keep safe any private information that Fidelity must

disclose in order to comply with the discovery requests. Further, unlike resolution of the instant motion, subsequent refinement of the contours of the discovery the Court has authorized will not dispose of the entire § 1782 petition, so the Court will refer the parties' filings to the magistrate judge, who is authorized to dispose of those issues by order. If the parties cannot reach agreement on any of the matters described above, the magistrate judge is instructed to use his discretion to select whichever of the parties' proposals is more reasonable and in line with the principles just described.

## VI. CONCLUSION

For the foregoing reasons, the motion to designate the Order as a report and recommendation, [ECF No. 135], is **DENIED AS MOOT**; and the objections, [ECF No. 142]; [ECF No. 143]; [ECF No. 144], are **DENIED** subject to the parties' compliance with the joint submission outlined in section V of this order, which the parties are **ORDERED** to file within 28 days.

**SO ORDERED.**

August 27, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE